UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

─────────────────

№ 06-CV-3409 (JFB)

─────────────────

IN RE: JOHN ANTHONY ALBICOCCO,

Debtor.

JOHN ANTHONY ALIBICOCCO,

Appellant,

VERSUS

ORESTE ALBICOCCO,
MARY ROSSINI,
ROCCO ROSSINI,
PORT DOCK & STONE CORPORATION,

Appellees.

─────────────────

MEMORANDUM AND ORDER
August 16, 2006

─────────────────

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal from the involuntary bankruptcy proceeding of Debtor John Anthony Albicocco, under Chapter 7 of the Bankruptcy Code. Debtor appeals from an Order of the Honorable Stan Bernstein, United States Bankruptcy Judge, approving a stipulation of settlement between the Trustee and several creditors of Debtor's estate. Creditor Port Dock & Stone Corporation ("PDSC") moves to dismiss the instant appeal, asserting that dismissal is appropriate because: (1) Debtor has failed to timely comply with filing requirements under Rule 8006 of the Federal Rules of Bankruptcy Procedure; and (2) Debtor lacks standing to prosecute the instant appeal. For the reasons set forth below, the Court agrees on both grounds, and dismisses the instant appeal.

I. BACKGROUND

A. Debtor's Former Assets

Debtor John Anthony Albicocco claims that he and his brother, Steven Albicocco, created and owned, at least at one point, a number of business entities which in turned owned and operated various restaurants and

catering businesses. (*See* Affidavit of John Anthony Albicocco ("Albicocco Aff.") at ¶¶ 7, 9.)[1] These entities included AJ&S Enterprises, which owned John Anthony's Water Café, Inc., Coco's Café, Inc. which owned Coco's Café, Tee T's Landing, which held the Harbor Club, 95 New York Avenue, Inc., which held the Babylon Cove Marina, and Rick's Café Inc., which did business under the name "The Vanderbilt." (*See id.*) Debtor also claims that he and his brother, through AJ&S Enterprises, purchased an investment property, 9 Post Place, Babylon, New York, and that he personally owned his residence at 84 Preston Street, Huntington, New York. (*See id.* ¶ 8.) Debtor claims that at one point he held 26 percent of the ownership of PDSC, a family-run, closely-held corporation.[2] (*See id.* at ¶¶ 4,10.)

### B. The Trotta Loan

In connection with the Vanderbilt operation, Debtor and his brother Steven obtained an unsecured loan in excess of $2 million from Trotta Tire and Rubber Co., Inc. ("Trotta"). (Affidavit of Robert L. Pryor ("Pryor Aff.") ¶ 14.) The Vanderbilt venture failed, and the entity declared bankruptcy. (*See* Albicocco Aff., ¶ 9.) Debtor claims that the pressures involved in the failed enterprise and health complications related to his "morbid obesity" forced him to leave New York for Florida for a number of years, during which he entrusted his business interests to his brother Steven. (*See* Pryor Aff., Ex. N at ¶ 73.) Debtor claims that he returned in 1999. (*See id.* at ¶ 74.)

In 1999, Trotta commenced an action in New York State Supreme Court, Nassau County, against Debtor and Steven, regarding the debt owed under the loan. (*See* Pryor Aff. ¶ 14; Ex. E.) Debtor and his brother Steven defaulted and, on December 21, 1999, Trotta obtained a judgment of $2,591,021.60 against Debtor and his brother. (*See id.*)

### C. Debtor's Adversary Proceeding in PDSC Bankruptcy

By 2004, PDSC had filed its own voluntary bankruptcy proceeding under Chapter 11 of the Bankruptcy Code. Within that bankruptcy case, Debtor commenced an adversary proceeding which alleged that his assets, including his home and stock in PDSC, and his ownership in many of the business entities he owned with Steven had been unlawfully converted by PDSC. (*See* Pryor Aff., Ex. C.) The proceeding was commenced in the form of an Order to Show Cause seeking, *inter alia,* the imposition of a constructive trust on the assets in question. (*See id.*) In connection with that proceeding, Debtor submitted an affidavit, in which he noted that he and Steven transferred the assets in question to PDSC to protect them from bankruptcy creditors:

> Based on the bankruptcy of the Vanderbilt and the debt of $2.5 million, my Father CEO of Port Dock and Stone Corp. of which Steven Albicocco and I owned 26% each at

---

[1] This affidavit was initially submitted in connection with an adversary proceeding commenced in PDSC's Chapter 11 voluntary bankruptcy proceeding, discussed *infra*. It is attached as Exhibit C to the appellees' motion to dismiss.

[2] The CEO of PDSC was the late Salvatore (Sam) Albicocco, Debtor's father. (*See* Albicocco Aff., ¶ 6.) Debtor claims that the other shares of PDSC were at least at one point distributed between his brothers Steven (26 percent), James (24 percent) and Oreste (24 percent). (*See id.* ¶ 10.)

2

that time, James Albicocco 24% and Oreste Albicocco 24%, recommended that Steven and I move our assets into Port Dock and Stone Corp. to protect the assets from the creditor and the bankruptcy. The expectation was to recover the assets after we dealt with the debt and the bankruptcy.

(*Id.* ¶ 10.) The affidavit also noted that "as of 1998 I moved my shares of Port Dock and Stone Corporation into the care of Port Dock and Stone Corporation." (*Id.* ¶ 12.) Debtor alleged that the assets transfer documents were executed without his signature and without consideration, and were thus fraudulent. (*See id.* ¶ 16.) He further alleged that Port Dock Holdings, Inc., was an entity established by his sister, Mary Rossini, and his brother-in-law, A. Rocco Rossini, for the purpose of unlawfully converting his assets. (*See id.* ¶ 19.)

On January 8, 2004, the Bankruptcy Court held oral argument regarding Debtor's Order to Show Cause. The court immediately expressed its concern with Debtor's statement that assets were moved to frustrate creditors of the Vanderbilt, noting that it warranted investigation by the U.S. Trustee's Office:

> THE COURT: . . . I am not going to try this on the merits at this point. I am just telling you that your affidavit raises a substantial issue.
>
> It appears to me and to everyone else who has read it, and your clients have made a party admission that they actively participated with other members of the Albacocco [sic] family to transfer assets or to act as if assets were transferred so that creditors, particularly of Vanderbilt, would not be able to realize on some of those assets.
>
> . . .
>
> All of those are interested in the issues, but on the face of the affidavit, I have to refer this, Mr. McPharland, to investigation by the United States Trustees Office. I can't ignore these kinds of affidavits when they are presented in the Court.
>
> . . .
>
> . . . I am going to charge the U.S. Trustee with making an investigation and reporting to this Court whether or not Vanderbilt ought to be re-opened, which then gives rise to whether any of these assets are assets of the Vanderbilt estate.

(Affirmation of Robert J. Del Col ("Del Col Aff.") Ex. 4 at 15-16.) The Bankruptcy Court then proceeded to dismiss Debtor's claims because his unclean hands barred him from obtaining equitable relief:

> THE COURT: Now, I can't give you the relief you seek because you don't come into Court with clean hands. That's a fundamental equitable doctrine.
>
> . . .
>
> . . . You cannot come in here and say that you sought to transfer assets, you, Steven Albacocco [sic] and his brother, to ensure that the assets couldn't be realized by their creditors, and then come in here and seek injunctive relief, which is an equitable

3

remedy. You can't get past the clean hands doctrine quite apart from whatever deficiencies there may be in your pleadings.

. . .

. . . I am dismissing your request for injunctive relief simply on the doctrine of clean hands based upon the affidavit that your client filed, and that is simply the end of that. So we don't need to engage in protracted proceedings. Now that the affidavit is on file, I am asking for an investigation by [the United States Trustee].

(*Id.* at 16-17.) Debtor did not appeal the dismissal of this adversary action.

### D. Sale of John Anthony's Water Café

As part of the administration of PDSC's Chapter 11 bankruptcy proceeding, PDSC sought to sell John Anthony's Water Café. By affirmation dated July 15, 2004, Debtor's counsel objected to the sale, arguing that the property was transferred to PDSC without authority by his brother and that his signature was forged. (*See* Pryor Aff. Ex. H.) Following the submission of this opposition, the Bankruptcy Court indicated that Debtor's position was inconsistent with the affidavit he filed in his prior adversary proceeding, and that he should consider the civil and criminal implications of such inconsistency. (*See* Pryor Aff., ¶¶ 16, 57.) By letter dated August 17, 2004, Debtor informed the Bankruptcy Court that he was withdrawing his objection, and that he consented to the sale of John Anthony's Water Café. (*See* Pryor Aff., Ex. I.)

### E. The Trotta Action

In 2001, Trotta commenced another lawsuit in New York State Supreme Court against Debtor, his brother, PDSC and other individuals, alleging, *inter alia,* that Debtor and his brother Steven fraudulently transferred a number of their assets to PDSC, in order to frustrate Trotta's ability to collect the debt owed (the "Trotta Action"). (*See* Pryor Aff., Ex. D.) PDSC and its then principals, A. Rocco Rossini and Mary Rossini, defended the action, arguing that the transfers of assets were supported by valuable consideration, specifically a debt in excess of $4 million owed to PDSC on a loan made to AJ&S Enterprises. (*See* Pryor Aff. ¶ 14; Ex. D at ¶¶ 20-21.)

Steven Albicocco filed his own bankruptcy petition, and his trustee took over prosecution of the Trotta Action and removed it to the Bankruptcy Court, within the PDSC proceeding, on March 11, 2004. (*See* Pryor Aff. ¶ 15.) The parties worked vigorously to settle the claims, and on September 15, 2004, notice was served on parties in interest if a proposed settlement between PDSC, Port Dock Holdings, Inc., Steven Albicocco's Trustee, Trotta, Mary Rossini and A. Rocco Rossini. (*See* Pryor Aff. Ex. F.) This notice informed parties that the settlement regarded the Trotta Action, which sought to resolve issues regarding the alleged fraudulent transfer of the following assets:

> (a) all shares owned by John Anthony and Steven in (I) Coco's Water Café, Inc., (ii) Tee T's Landing Corp., (iii) 95 New York Avenue, Inc., (iv) John Anthony's Water Café, Inc., (v) Salty D. Inc., (vi) Gotham Sand & Stone Corp., and (vii) Port Dock and Stone Corp., and (b) all right, title and

interest of John Anthony, Steven and their partnership in the (I) 494 Fire Island Avenue, Babylon New York, (ii) 95 New York Avenue, (iii) Post Place, Babylon, and (iv) 84 Preston Street, Huntington, New York (collectively the "Surrendered Assets").

(Pryor Aff. Ex. F at ¶ 5.) The notice informed the parties that the Trotta Action had been vigorously defended by all parties, save Debtor, who had defaulted in answering Trotta's complaint. (*See id.* at ¶ 7.) The settlement provided in excess of $1.8 million to the Albicocco Trustee for the benefit of Trotta and other creditors. (*See* Pryor Aff., ¶¶ 15, 52.) A portion of the funds distributed were directly derived from the sale of John Anthony's Water Café, discussed *supra*. (*See id.* ¶ 10(A).) The settlement also assigned Trotta's judgments against Debtor to PDSC. (*See* Pryor Aff. Ex. F. ¶ 10(H).) Debtor was served with the notice of settlement through his counsel at the time (the same counsel who withdrew the objection to the sale of John Anthony's Water Café), but he did not respond to offer any objections. (*See* Pryor Aff. ¶ 15.) By Order dated October 18, 2004, the Bankruptcy Court approved the stipulation of settlement. (*See* Pryor Aff., Ex. G.)

F. Debtor's CPLR 3102(c) Proceeding

On August 11, 2005, Debtor filed a Notice of Motion under N.Y. C.P.L.R. § 3102(c) in New York Supreme Court, Suffolk County, a discovery proceeding commenced to elicit information to commence a suit. (*See* Pryor Aff. ¶ 45; Ex. N.) The affidavit attached to the Notice of Motion included Debtor's allegations that his siblings converted his assets, including his home, by forgery and fraud through PDSC. (*See* Pryor Aff., Ex. N.)

G. Debtor's Bankruptcy Proceeding

By involuntary petition filed on September 2, 2005, PDSC commenced this involuntary bankruptcy proceeding against the Debtor. (*See* Pryor Aff. ¶ 4.) Debtor did not answer and, accordingly, an Order for Relief was entered under Chapter 7 of the Bankruptcy Code on October 3, 2005. (*See id.* at ¶ 5.) Allan Mendelsohn was appointed as interim, and subsequently permanent trustee, of Debtor's case. (*See id.*) Debtor's CPLR § 3102(c) proceeding was removed into the bankruptcy proceeding on December 1, 2005.

On December 7, 2005, Debtor moved to dismiss the bankruptcy case. In his reply briefing, Debtor again referenced the alleged fraudulent transfer and conversion of his assets by PDSC. (*See* Pryor Aff., Ex. O.) The Bankruptcy Court held oral argument on January 10, 2006, and denied Debtor's motion to dismiss, noting that he defaulted in answering the involuntary petition, and that there was no basis to dismiss the petition given Debtor's admission to the existence of the debt. (*See* Pryor Aff., ¶ 7.) The Debtor failed to appeal the Order denying his motion to dismiss the bankruptcy petition. (*See id.*)

The Trustee proceeded to address the administration of the assets of Debtor's estate. On March 13, 2006, the Trustee, standing in Debtor's shoes, moved to settle the controversy regarding Debtor's home and his lawsuit against PDSC and its principals. The Bankruptcy Court approved the settlement by Order dated June 5, 2006, which is the subject of the instant appeal.

## H. Debtor's Appeal

The Bankruptcy Court entered its Order approving the settlement on June 6, 2006. Debtor filed his Notice of Appeal on June 16, 2006. On June 20, 2006, the Clerk of the Bankruptcy Court for the Eastern District of New York provided notice to each of the parties as to their obligations with respect to the filing of the appeal. The document, entitled "Notice to Parties Concerning Appeal (ECF Case)" informed appellant of his obligations under Bankruptcy Rule 8006 regarding the filing of the record on appeal and statement of issues to be presented on appeal:

> 2. "Appellant's Designation" Appellant's Designation of record on appeal and statement of issues to be presented on appeal are due within ten (10) days of the date of filing the later of the following is applicable: (a) the notice of appeal; (b) entry of an order granting leave to appeal; or © entry of an order disposing of the last timely motion outstanding of a type specified in Bankruptcy Rule 8002(b). A copy of the designation and statement shall be served by the appellant on the appellee.

(Pryor Aff., Ex. K.) Debtor's counsel sent a document to PDSC via electronic mail entitled "Debtor/Appellant's Statement Pursuant to Rule 8006" on July 10, 2006, and electronically filed the document on July 13, 2006.

PDSC now moves to dismiss the instant appeal, arguing that the case should be dismissed because: (1) Debtor failed to comply with Rule 8006 of the Federal Rules of Bankruptcy Procedure; and (2) Debtor lacks standing to prosecute the appeal. The Court held oral argument on the instant motion to dismiss on August 7, 2006.

## II. RULE 8006 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

PDSC moves to dismiss the instant appeal because plaintiff failed to comply with the requirements of Rule 8006 of the Federal Rules of Bankruptcy Procedure. Rule 8006 dictates that:

> Within 10 days after filing the notice of appeal as provided by Rule 8001(a), entry of an order granting leave to appeal, or entry of an order disposing of the last timely motion outstanding of a type specified in Rule 8002(b), whichever is later, the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented.

FED. R. BANKR. P. 8006. The parties do not dispute that Debtor's Rule 8006 statement was due on June 26, 2006, ten days after Debtor filed his Notice of Appeal. Since Debtor did not file his Rule 8006 Statement until July 13, 2006, compliance was seventeen days late.[3]

Since it is undisputed that the filing of the Debtor's Rule 8006 Statement was late, the

---

[3] Debtor's July 10, 2006 e-mail is insufficient to satisfy the requirements of Rule 8006 because the plain language of the Rule indicates the Statement must be filed with the clerk of the court, in addition to being served on appellees, within the ten day period. *See* FED. R. BANKR. P. 8006. In any event, the service of the statement on appellees was 14 days late.

6

only question before the Court is whether the Court should grant a motion for an extension of time, *nunc pro tunc*, to cure the untimeliness. Under Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, a Court may accept a late filing notwithstanding a missed deadline. *See Lynch v. United States (In re Lynch)*, 430 F.3d 600, 603 (2d Cir. 2005). According to the Rule, a Court may extend the time with which to comply with the rule on motion made after the expiration of the deadline, "where the failure to act was the result of excusable neglect." FED. R. BANKR. P. 8006(b)(1). Thus, the decisive question is whether or not Debtor's failure to file on time was the result of excusable neglect.

The Supreme Court provided an explanation as to the meaning of "excusable neglect" standard in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.E.2d 74 (1986). "*Pioneer* provided that the determination of whether to permit an untimely action must be made 'taking account of all relevant circumstances surrounding the party's omission,' including 'the danger of prejudice to the debtor, the length of the delay and it potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Lynch*, 430 F.3d at 603 (quoting *Pioneer*, 507 U.S. at 395).

Following *Pioneer*, the Second Circuit has made clear that the definition of excusable neglect allows a court to "disallow untimely acts, as a general rule, when a party fails to follow clear rules." *Lynch*, 430 F.3d at 604. The Second Circuit initially made this evident in the context of Federal Rule of Civil Procedure 60(b), stating that:

> [W]e do not believe that the possibility that a court may properly find excusable neglect on such grounds [ambiguous or conflicting rules] alters the principle that failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect. We are not alone in that view . . . Where . . . the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.

*Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250-51 (2d Cir. 1997) (citations omitted). In *Lynch*, the Second Circuit extended this limiting principle on excusable neglect to the bankruptcy context. *Lynch*, 430 F.3d at 604 ("We believe that *Canfield*'s gloss on *Pioneer*, albeit made in another context, must also govern the meaning of excusable neglect in the context of *Pioneer* itself–that is, bankruptcy, and specifically, the interpretation of Rule 9006(b)(1)."). Specifically, the Second Circuit held that a district court did not abuse its discretion in disallowing a late Rule 8006 Statement because the "filing requirement of Rule 8006 was quite clear" and it was evident that appellant's attorney "was aware of the deadlines." 430 F.3d at 604.

Under the dictates of *Lynch* and the facts of the instant case, the Court possesses the discretion to find that Debtor's late filing did not constitute "excusable neglect" and thereby dismiss his appeal for failure to comply with Rule 8006. *Lynch* plainly establishes that the filing requirements of Rule 8006 are clear. *See* 430 F.3d at 604. Moreover, as in *Lynch*, Debtor's counsel was aware of the deadline, as he admits that he received the notice from the Clerk of the Bankruptcy Court, notifying

7

him of the prerequisites for perfecting his appeal, including Rule 8006.[4] *See id.*

In response, Debtor offers several excuses for his late filing. Debtor's counsel notes that he is not a bankruptcy attorney, and that his delay is attributable to the time necessary to familiarize himself with the bankruptcy appellate process. Further, he notes that, although Debtor was at one time represented by a bankruptcy attorney, he withdrew from the case, and that he became aware of the fact that he was acting as bankruptcy counsel for the first time on June 15, 2006.

The Court recognizes the hardship encountered by Debtor in losing the services of his bankruptcy attorney shortly before the Notice of Appeal was filed. However, that alone does not relieve counsel that continued to represent him to follow the applicable rules. As a general matter, familiarity with an area of law alone is insufficient to excuse non-compliance, as an attorney has a professional obligation to gain competence in the unfamiliar area of law in a timely manner, or associate with an attorney who possesses the relevant expertise.[5] That notwithstanding, even if failure to comply with Rule 8006 based on unfamiliarity with the rule could constitute "excusable neglect" in some cases, Debtor's counsel cannot claim that he was unaware of the requirements of Rule 8006 based on his personal receipt of the notice from the Bankruptcy Clerk regarding the applicable deadlines, which plainly set forth his obligations.[6] If there were difficulties with

---

[4] Although Debtor's counsel acknowledges that he received the notice from the Clerk, he argues that it was insufficient insofar as it did not provide an explanation of the consequences for non-compliance. In support of his argument, Debtor points to *Pioneer*, in which the Supreme Court, in assessing the "culpability" of the counsel who failed to meet a deadline, gave credence to the fact that the deadline at issue (the bar date for filing proofs of claim in a bankruptcy) was provided "without any indication of the significance of the bar date." 507 U.S. at 398. *Pioneer*, however, is distinguishable–there, the Supreme Court noted that the particular bar date that was provided by the Bankruptcy Court was "outside the ordinary course in bankruptcy cases," and was placed in a peculiar and inconspicuous place within a notice regarding a creditors' meeting. *Id.* In the instant case, by contrast, Debtor violated a standard rule applicable to bankruptcy appeals. Moreover, counsel was not provided with an "unusual form of notice," as in *Pioneer,* but was rather provided with plain and conspicuous notice of the rule in a one-page document regarding applicable rules governing procedure revolving around Debtor's appeal. *Id.* at 398-99. *Pioneer*'s reference to notice's deficiency regarding the "significance of the bar date" appears to address the fact that the notice did not specifically provide what deadline the "bar date" specifically referenced (the filing of proof of claims). *See id.* at 383-84. Here, by contrast, the notice provided to the Debtor plainly provided that the ten day period applied to the designation of the record on appeal and the statement of issues to be presented on appeal. (*See* Pryor Aff., Ex. K.) The notice in this case clearly set forth the deadline for specific tasks to be completed, and counsel should be expected to take deadlines established by rule seriously.

[5] *See* New York Code of Professional Responsibility DR 6-101(A) ("A lawyer shall not: 1. Handle a legal matter which the lawyer knows or should know that he or she is not competent to handle, without associating with a lawyer who is competent to handle it. 2. Handle a legal matter without preparation adequate in the circumstances. 3. Neglect a legal matter entrusted to the lawyer.").

[6] Theoretically, had Debtor's counsel not received actual notice from the clerk, he could argue that *Lynch* is distinguishable because the Second Circuit cited the fact that Lynch's attorney was

compliance, Debtor's counsel should have requested an extension prior to the expiration of the clear deadline. Although the withdrawal of bankruptcy counsel may have caused difficulties, current counsel was aware of the fact that he was responsible for handling the appeal as of the time that the notice of Rule 8006 was received. Under these circumstances, Debtor's counsel was culpable for non-compliance, and the circumstances surrounding the omission were not so extraordinary as to justify removing this case from the ambit of the rule in the Second Circuit which dictates that the failure to follow a clear rule does not generally constitute excusable neglect.[7] *Canfield,* 127 F.3d at 251 ("Where . . . the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.").

Debtor also argues that the Court should not exercise its discretion to dismiss the case for failure to comply with Rule 8006 because despite the untimely filing, PDSC and the trustee did not suffer any prejudice from a delay which Debtor claims was not very significant in length. As a threshold matter, the Court notes that the delay was not insignificant–Debtor's filing of the Rule 8006 statement 17 days after the due date represents well over double the 10-day period of the time allotted for filing. As several courts have noted, the relatively short time period for Rule 8006 compliance derives from the nature of bankruptcy proceedings, in which "'the court has an obligation to protect the interests of the potentially many[] interested parties by distributing as quickly as possible what often are economically fragile assets.'" *Monte Carlo Cruise Concessions, Inc. v. Lassman*, No. 04-CV-12215 (DPW), 2005 WL 352858, at *3 (D. Mass. Feb. 8, 2005) (quoting *Puerto Rico Telephone Co. v. Advance Cellular Systems, Inc. (In re Advance Cellular Sys., Inc.)*, 267 B.R. 10, 14 (D.P.R. 2001)); *cf.* Daniel R. Cowans, BANKRUPTCY LAW AND PRACTICE § 18.4 (7th ed. 1998) (distinguishing abbreviated ten-day period under FED. R. BANKR. P. 8002 from the customary thirty-day limit for other federal matters).

---

"aware of the deadlines" as part of its finding that the district court did not abuse its discretion in finding no excusable neglect. *See* 430 F.3d at 604.

[7] The Court recognizes that punishing Debtor for his counsel's failure to follow Rule 8006 may be harsh. However, the Supreme Court has specifically stated that clients are generally accountable for the acts and omissions of their attorneys, including within the specific context of determining excusable neglect. *Pioneer*, 507 U.S. at 396-97 ("In other contexts, we have held that clients must be held accountable for the acts and omissions of their attorneys. . . . This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel. Consequently, in determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable.") (internal citations and quotations omitted); *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of the facts, notice of which can be charged upon the attorney.") (internal citation and quotation omitted).

9

Next, the Court finds that the prejudice factor of the *Pioneer* test is not conclusive, as it does not point heavily in Debtor's favor. In opposition to Debtor's conclusory arguments that there has been no prejudice, PDSC and the trustee contend that there is an interest in the final resolution of the bankruptcy estate, particularly in selling Debtor's home during the prime real estate season. *See, e.g., Monte Carlo*, 2005 WL 352858 at *3 (crediting trustee's claim of prejudice because "interested parties await a final ruling" on disposition of assets of the estate over debtor's conclusory allegations of prejudice). Although the evidence of prejudice is limited, the Court is not confronted with a situation in which it is plain that there is absolutely no prejudice to the party seeking dismissal, as was the case in *Pioneer*. *See* 507 U.S. 397-98 (noting lack of prejudice to debtor in allowing late claim where the debtor's second amended plan of reorganization, offered after the litigation was underway, took into account the late claim). Although the Court finds that the prejudice in this case is not substantial, it is sufficient to permit this Court to exercise its discretion to dismiss the case for lack of excusable neglect, given the violation of a clear rule of which counsel was aware. *Pioneer*, 507 U.S. at 398 (noting that where counsel is remiss in meeting requirement and there is "*any* evidence of prejudice to petitioner or to judicial administration . . . or any indication at all of bad faith" a court would not abuse its discretion in declining to find the neglect excusable) (emphasis added).

In sum, the Court exercises its discretion to dismiss the appeal for failure to comply with the requirements of Rule 8006 of the Federal Rules of Bankruptcy Procedure. The Debtor failed to demonstrate that the deficiency was excusable neglect as the dictates of Rule 8006 are clear, and his counsel was aware of the requirements.[8] *See Lynch*, 430 F.3d 604.

### III. APPELLATE STANDING[9]

Even if the Court did not exercise its discretion to dismiss the instant case for failure to comply with Rule 8006, the Court finds, in the alternative, that Debtor lacks standing to prosecute the instant appeal because he failed to demonstrate solvency. "It is well-established that a Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid." *60 East 80th Street Equities, Inc. v. Sapir (In re 60 East 80th Street Equities, Inc.)*, 218 F.3d 109, 115 (2d Cir. 2000) (citing L. King, COLLIER ON BANKRUPTCY § 502.02[2][c] (stating that a

---

[8] Moreover, as in *Lynch*, Debtor's failure to file on time was also in the context of a generally casual attitude to the bankruptcy rules. *See* 430 F.3d at 602, 604 n.4 (crediting district court's finding that Lynch's Designation under Rule 8006 did not represent a serious effort to comply with the rules because it did not enumerate specific documents, but identified the record on appeal in only the most general terms: "All exhibits marked at the trial in this matter on June 25-26, 2001. Appellant reserves the rights to add additional documents as necessary.") In the instant case, Debtor filed a similarly deficient Rule 8006 Designation, noting that the Record on Appeal contains "All Orders of Bankruptcy Court affecting the case," and "All correspondence between the Trustee and respective counsel," and "All papers related to any other bankruptcy proceeding involving the creditors."

[9] Although the Court could dismiss Debtor's appeal for violation of Rule 8006 alone, the Court addresses PDSC's alternative argument, regarding lack of standing, out of an abundance of caution.

debtor is a party in interest and has standing to object to a claim where there could be a surplus after all claims are paid); *In re Vebeliunas*, 231 B.R. 181, 189-90 (Bankr. S.D.N.Y. 1999) (explaining that a debtor retains a security interest in the estate of the property only when the debtor can demonstrate that there would be a surplus for his estate)*, appeal dismissed*, 246 B.R. 172 (S.D.N.Y. 2000). This principle extends to appellate standing–only a debtor who has demonstrated solvency can demonstrate a pecuniary interest in the distribution of his assets amongst his creditors, and may thus prosecute an appeal. *See Kabro Assoc. of West Islip, LLC v. Colony Hill Assoc. (In re Colony Hill Assoc.)*, 111 F.3d 269, 273 (2d Cir. 1997) (noting that appellate standing extends only to parties aggrieved pecuniarily by the challenged ruling of the bankruptcy court); *see also Willemain v. Kivitz*, 764 F.2d 1019, 1022-23 (4th Cir. 1985) (holding that a debtor that cannot demonstrate solvency lacks standing to appeal).

Debtor does not contest the fact that his debt to creditor PDSC is $3,465,907.22, and that the value of his home, even if rightfully his, does not exceed the value of the debt.[10] Debtor argues that he is solvent because he alleges that the value of his claims against PDSC and its principals far exceed the amount of the debt. PDSC and the Trustee, on the other hand, claim that his removed state claims have no value because they are barred by the doctrine of *res judicata*.

The doctrine of *res judicata*, otherwise known as claim preclusion, prevents parties from relitigating issues in subsequent litigation that were or could have been litigated in a prior action. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine applies only if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000).

The Court agrees that *res judicata* applies to Debtor's removed claims. First, Debtor raised the identical claims regarding the alleged conversion and the fraud on his assets in the context of his adversary proceeding commenced in the PDSC bankruptcy case. The Bankruptcy Court dismissed the adversary proceeding, based on its determination that relief was barred by the unclean hands doctrine, since Debtor admitted in a sworn affidavit that he had sought to move his assets to PDSC in order to provide them a safe harbor from his creditors. Debtor argues, however, that the dismissal is not entitled to *res judicata* effect because the Court made several references on the record that it was not determining an issue "on the merits." However, the Court does not read the Bankruptcy Court's order as refraining from reaching the merits of Debtor's adversary proceeding–the Bankruptcy Court's references to not determining an issue "on the merits" repeatedly occurs in the context of discussing whether or not the affidavit warranted re-opening of the Vanderbilt bankruptcy case, as he referred that "substantial issue" for investigation by the United States Trustee's Office. (*See* Del Col Aff., Ex. 4 at 15-17.) In the immediate context of discussing Debtor's adversary proceeding, the Bankruptcy Court repeatedly noted that the case was being dismissed based

---

[10] PDSC estimates the value of Debtor's residence to be no more than $1 million. (*See* Pryor Aff.*,* ¶ 38.) Debtor has not contested this calculation.

11

on the unclean hands doctrine. (*See id.* at 16-17, 24-25.) Regardless of whether or not that order of dismissal was warranted and appropriate, the Court finds that the ruling was in fact on the merits, and Debtor failed to appeal it.[11]

Alternatively, the settlement in the PDSC case regarding the disposition of the assets at stake bars Debtor's claims through the doctrine of *res judicata*. A bankruptcy court's approval of a settlement order that resolves litigation between parties is a final order, and is "entitled to full res judicata effect." *See Adam v. Itech Oil Co. (In re Gibraltar Resources, Inc.)*, 210 F.3d 573, 576 (5th Cir. 2000). "The finality of court-approved settlements . . . is important, especially to the efficient administration of the estate and to reassure settling parties that the trustee will not relitigate the settled claims." *Petitioning Creditors of Melon Produce v. Braunstein*, 112 F.3d 1232, 1240 (1st Cir. 1997) (citation omitted). Although Debtor defaulted in the Trotta Action, he participated through counsel in the PDSC bankruptcy case. In addition to filing the initial adversary proceeding, his counsel at the time filed, and later withdrew, an objection to the sale of one of the assets that plaintiff claims were taken from him by fraud. (*See* Pryor Aff., Exs. H, I.) Less than one month later, Debtor was served, through counsel, with the notice of proposed settlement, which explicitly provided that it dealt with the disposition of the same asserts that are at issue in connection with Debtor's removed adversary proceeding at issue, including the Debtor's residence. (*See* Pryor Aff., Ex. F.) Debtor failed to object to or appeal the approval of that settlement. Under these circumstances, Debtor cannot now re-litigate the disposition of these assets under the doctrine of *res judicata*. *See In re Gibraltar Resources*, 210 F.3d at 576 (concluding that settlement precluded claim under *res judicata* where party failed to appeal order approving bankruptcy settlement); *Braunstein*, 112 F.3d at 1240 (holding that unsecured creditors were barred from bringing claims under *res judicata* where they had notice of the hearing on approval of the settlement agreement, participated and failed to appeal the settlement).

In sum, the Court finds that Debtor's claims of fraud in the transfer of his assets lack value as they are plainly barred by the doctrine of *res judicata*. Since *res judicata* renders the claims valueless, they do not establish solvency, and in turn, standing to prosecute the instant appeal.[12] Thus, because Debtor has not otherwise demonstrated solvency, he lacks standing to prosecute the

---

[11] Debtor argues that the Bankruptcy Court should not have dismissed the proceeding merely based on statements within the affidavit without allowing testimony. In particular, Debtor argues that the Bankruptcy Court was "uninformed" and made a "snap judgment," and should have allowed an investigation into the facts before relying on an affidavit that was "drafted in haste" and "inartfully worded." However, if Debtor believed that the Bankruptcy Court abused its discretion and issued an erroneous ruling, the proper forum for challenging that would have been an appeal of that order. The Debtor failed to avail himself of that opportunity, and cannot challenge the propriety of that final order at this juncture.

[12] *Cf. Casa Nova, Inc. v. Casa Nova of Lansing, Inc. (In re Casa Nova of Lansing, Inc.)*, 146 B.R. 370, 382 (Bankr. W.D. Mich. 1992) (finding that since claim was barred by doctrine of unclean hands, and since that determination would have *res judicata* effect if the claim was ever raised again, the court could not assign a value to it for the purposes of confirming a Chapter 11 reorganization plan).

12

instant appeal.

## IV. CONCLUSION

For both of the alternative reasons stated above, the Court dismisses the instant appeal. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 16, 2006
Central Islip, New York

\* \* \*

The attorney for the appellant-debtor is Robert J. Del Col, Esq., 34 Dewey Street, Huntington, New York 11743. The attorney for the appellee-creditor Port Dock and Stone Corporation is Robert L. Pryor, Esq., 675 Old Country Road, Westbury, New York 11590. The trustee is Allan B. Mendelsohn, Esq., of Zavatsky, Mendelsohn, Gross, Savino, Levy LLP, P.O. Box 510, 33 Queens Street, Syosset, New York 11791-0510.